

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-00312-CV

**IN THE INTEREST OF A.S.S.-P.** and I.L.S.-P., Children

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2021-PA-01202
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:        Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: August 2, 2023

AFFIRMED

Appellant A.S. challenges the trial court's order terminating his parental rights to his children, A.S.S.-P. and I.L.S.-P.[1]  On appeal, he claims the evidence is legally and factually insufficient to support the trial court's best interest finding.  We affirm.

## BACKGROUND

The Texas Department of Family and Protective Services ("the Department") became involved with the family after receiving a referral alleging A.S. and A.M., the children's mother, were homeless and using illegal drugs while caring for their two children, A.S.S.-P. (one year old) and I.L.S.-P. (one month old).  The Department implemented a safety plan for the family and

---

[1] To protect the identity of the minor children in this appeal, we refer to the parent and children by their initials. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

placed the children with a woman named K.C. During the Department's investigation, it discovered the family had violated the safety plan when it found A.S. caring for the children unsupervised; it was also reported the parents continued to test positive for illegal drug use. As a result, the Department initiated emergency removal proceedings, seeking temporary managing conservatorship of the children and termination of the parents' parental rights. The trial court signed an emergency removal order naming the Department temporary sole managing conservator of the children, and the Department placed the children with a foster family and created a service plan for the parents. Specifically, the Department's service plan required A.S. to complete domestic violence classes, attend individual therapy, engage in a substance abuse program, submit to random drug testing, and maintain stable employment and housing.

The case proceeded to a bench trial, and at trial, A.M. relinquished her parental rights to the children. The trial court then heard testimony from the Department caseworker regarding A.S., and the trial court ultimately ordered termination of his parental rights based on statutory grounds (O) and (P) in subsection 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE §§ 161.001(b)(1)(O) (failure to comply with court-ordered service plan) and (P) (failure to complete court-ordered substance abuse program or after completion, continued to abuse controlled substance). It further found termination of A.S.'s parental rights is in the children's best interest. *See id*. § 161.001(b)(2). A.S. now appeals, challenging the legal and factual sufficiency of the trial court's best interest finding.

### STANDARD OF REVIEW

To terminate parental rights under section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence one of the predicate grounds in subsection 161.001(b)(1) and termination of parental rights is in the child's best interest. *See id*. § 161.001(b). Clear and convincing evidence requires "proof that will produce in the mind of

the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007.  To determine whether this heightened burden of proof was met, we use a heightened standard of review to decide whether a "factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *see, e.g.*, *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.).  "This standard guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *O.N.H.*, 401 S.W.3d at 683.

In reviewing the legal sufficiency of the evidence to support a trial court's best interest finding, we "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)) (internal quotation marks omitted).  We assume "the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so," and we "disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible."  *Id*. (quoting *J.F.C.*, 96 S.W.3d at 266) (internal quotation marks omitted).  We do not disregard undisputed evidence even if it does not support the trial court's finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence.  *Id*. (citing *J.F.C.*, 96 S.W.3d at 266).  In reviewing the factual sufficiency of the evidence, we perform "an exacting review of the entire record" and consider disputed or conflicting evidence. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014); *J.O.A.*, 283 S.W.3d at 345.  "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *J.O.A.*, 283 S.W.3d at 345. (quoting *J.F.C.*, 96 S.W.3d at 266) (internal quotation marks omitted).  Under these standards, the factfinder is the sole judge of the weight and

credibility of the evidence. *See id*. at 346; *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam).

### BEST INTEREST

#### *Applicable Law*

Under Texas law, there is a strong presumption a child's best interest is served by keeping the child with the parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, we must also presume "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE § 263.307(a). In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[2] *See id*. In addition to these statutory factors, we consider the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[3]

Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest—especially when the evidence shows the parental

---

[2] These factors include: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child or the child's parents; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system is available to the child. *See id*.

[3] These factors are (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *See id.*

relationship endangered the child's safety." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.); *see C.H.*, 89 S.W.3d at 27 ("The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child."). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re A.A.A.*, 265 S.W.3d 507, 516 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (citing *Holley*, 544 S.W.2d at 371–72). And, "[a] factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent." *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.). Finally, "[a] best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

### *Application*

Here, the Department presented evidence A.S. could not care for the children due to his illegal drug use. "Parental drug abuse reflects poor judgment and may be a factor to consider in determining a child's best interest." *In re J.M.T.*, 519 S.W.3d 258, 269 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *see In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (noting parent's drug use supports finding that termination is in best interest of child). This is because illegal drug use is relevant to multiple *Holley* factors, including a child's emotional and physical needs now and in the future, the emotional and physical danger to the child now and in the future, a parent's parental abilities, stability of the home, and a parent's acts or omissions pertinent to determining whether the parent-child relationship is improper. *See Holley*, 544 S.W.2d at 371–72. "Additionally, a parent's illegal drug use exposes [a] child to the possibility

that the parent may be impaired or imprisoned." *See In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) (explaining drug use implicates multiple *Holley* factors). Thus, as we have recognized, "[a] parent's illegal drug use supports a finding that termination of the parent-child relationship is in the best interest of the child." *In re A.M.O.*, No. 04-17-00798-CV, 2018 WL 2222207, at *2 (Tex. App.—San Antonio. May 16, 2018, no pet.) (mem. op.).

In this case, the Department caseworker testified the Department's "biggest concern" was A.S.'s illegal drug use. Specifically, she testified she was concerned with his methamphetamine, cocaine, and marijuana use. She stated the last drug test he completed was in May 2022—ten months after the children were removed from his care, and he tested positive. Since then, she scheduled him to take drug tests twice per month, but he did not show up for any of the tests. She further testified he did not start a drug treatment program as required by his service plan. According to the caseworker, A.S. told her he called one program, but when she spoke to the program to confirm whether he had called, the program told her A.S. called but never followed up to attend the program. She further testified the program verified its records did show it did not miss any calls from A.S. The caseworker concluded A.S.'s inaction showed he did not make any effort to obtain sobriety. Based on this evidence, the trial court could have formed a firm belief or conviction A.S.'s failure to submit to drug testing and attend a drug treatment program indicated he continued to use illegal drugs. *See, e.g. In re R.S.*, No. 01-20-00126-CV, 2020 WL 4289978, at *7 (Tex. App.—Houston [1st Dist.] July 28, 2020, no pet.) (mem. op.) ("The trial court could have reasonably inferred that the father was still using methamphetamine, or some other illegal drug, based on his failure to take court-ordered drug tests."); *In re E.R.W.*, 528 S.W.3d 251, 265 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (concluding factfinder could reasonably infer

parent's failure to submit to court-ordered drug testing indicates parent was avoiding testing and using illegal drugs).

In determining a child's best interest, the trial court is also permitted to consider whether A.S. complied with his court-ordered service plan. *See O.N.H.*, 401 S.W.3d at 687 ("Non-compliance with a service plan is probative of a child's best interest."). Here, the Department caseworker testified the Department first implemented a family-based safety plan before placing the children in foster care, but A.S. did not comply with the plan by staying with the children unsupervised. The caseworker testified after placing the children with a foster family, she reviewed the court-ordered service plan with A.S., and she explained to him failure to engage in the service plan could lead to termination of his parental rights. She testified she believed he understood the plan's importance, but he did not complete any of the plan's requirements. For instance, he attended only one domestic violence session. He also did not follow through with any referrals she set up for him. The trial court could have reasonably inferred A.S. lacked parental abilities, including the motivation to seek out and use available resources, based on his lack of engagement and failure to commit to his service plan. *See J.M.T.*, 519 S.W.3d at 270 ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of his child that he does not have the ability to motivate himself to seek out available resources needed now or in the future."); *see also* TEX. FAM. CODE § 263.307(b)(10), (11) (providing courts may consider willingness and ability of child's family to seek out, accept, and complete counseling services and willingness and ability of child's family to effect positive environmental and personal changes within a reasonable period of time).

Regarding his housing requirement, the Department caseworker testified at the beginning of the case, A.S. lived in an apartment with a roommate. After she performed a home visit at the apartment, he moved and did not inform her of his new housing arrangements. "Lack of stability,

including a stable home, supports a finding that the parent is unable to provide for a child's emotional and physical needs." *In re S.R.*, 452 S.W.3d 351, 367, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (highlighting child's need for permanence through establishment of stable, permanent home is paramount to best interest determination). As to employment, she knew he had a "construction handyman" job, but when she asked A.S. for employment confirmation, he did not provide anything. She testified she specifically requested a letter from his supervisor stating he was employed or a copy of his paycheck. *See In re T.R.*, 491 S.W.3d 847, 856 (Tex. App.—San Antonio 2016, no pet.) (considering a parent's failure to provide proof of employment in best interest review). Accordingly, the trial court could have reasonably concluded A.S.'s lack of stable housing and employment supported a best interest finding. *See In re D.M.A.*, No. 04-21-00441-CV, 2022 WL 298983 (Tex. App.—San Antonio Feb. 2, 2022, no pet.) (mem. op.) (reasoning evidence of parent's instability in employment and housing supports best interest finding).

Finally, the Department produced evidence it had a permanency plan for the children. The Department caseworker testified the Department planned to keep the children with their current foster placement, who was meeting the children's needs. When asked whether the foster family planned to adopt the children, the caseworker testified she was in the process of working with a permanent placement in Augusta, Georgia. The caseworker explained a paternal third cousin wanted to adopt the children, and the cousin was working with the Department to achieve this goal. Thus, the trial court could have reasonably formed a firm conviction the children would achieve permanency with the Department's plan.

Although we do not need to detail the evidence when affirming a verdict of termination, the undisputed evidence shows A.S. used illegal drugs after the children were removed from his care, did not comply with his service plan by submitting to random drug testing and engaging in a

drug therapy program, and did not obtain stable housing or employment to provide the children with a safe environment. *See A.B.*, 437 S.W.3d at 507. Such evidence is probative of a best interest finding, particularly given A.S. does not challenge any of the statutory grounds on which the trial court ordered termination. *See A.A.A.*, 265 S.W.3d at 516. The undisputed evidence also shows the children were doing well in their current foster placement, and the Department was working on a permanency plan with an out-of-state family member who was interested in adopting the children. *See id.* A.S. does not dispute this evidence; instead, he argues the Department removed the children from his care due to A.M.'s—not his—drug use. This argument however ignores the Department caseworker's testimony indicating the children were removed from the parents' care because of "[s]ubstance abuse by both Mom and Dad" and homelessness, and we must defer to the weight and credibility the trial court gave this testimony. *See J.O.A.*, 283 S.W.3d at 346; *H.R.M.*, 209 S.W.3d at 108. A.S. also argues he had been visiting the children and expressed his desire to reunite with them. Yet, the trial court also heard evidence showing A.S. failed to engage in the services required to reunite with the children, and again, we must defer to the weight and credibility the trial court gave this evidence. *See J.O.A.*, 283 S.W.3d at 346; *H.R.M.*, 209 S.W.3d at 108.

Accordingly, when viewing the evidence in the light most favorable to the trial court's best interest finding, we conclude the evidence is legally sufficient to prove termination of A.S.'s parental rights is in the children's best interest. *See J.O.A.*, 283 S.W.3d at 344. When viewing the entire record, we further conclude the evidence is factually sufficient to support the trial court's best interest finding. *See id.*

## CONCLUSION

We therefore affirm the trial court's order of termination.

Luz Elena D. Chapa, Justice